NOT FOR PUBLICATION                                    (Docket No. 39)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                        :
DAVID F. KNECHTEL,                      :
                                        :
                    Plaintiff,          :       Civil No. 08-5018 (RBK/KMW)
                                        :
          v.                            :       **OPINION**
                                        :
CHOICEPOINT, INC., CHOICEPOINT          :
SERVICES, INC., NATIONAL DATA           :
RETRIEVAL, INC., SUPERIOR               :
INFORMATION SERVICES, INC.,             :
LEXISNEXIS RISK & INFORMATION           :
ANALYTICS GROUP, INC., and REED         :
ELSEVIER, INC.,                         :
                                        :
                    Defendants.         :
_____:

**KUGLER**, United States District Judge:

This dispute arises out of the alleged improper dissemination of negative credit

information about Plaintiff David Knechtel by Defendants Choicepoint, Inc., Choicepoint

Services, Inc., National Data Retrieval, Inc., Superior Information Services, Inc., LexisNexis

Risk & Information Analytics Group, Inc., and Elsevier, Inc.[1]  In the Amended Complaint,

Plaintiff brings claims for violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681

et seq., defamation, negligence, and invasion of privacy/false light.  Presently before the Court is

_____

[1] Defendants LexisNexis Risk and Reed Elsevier were added in the Amended Complaint
on April 6, 2009.  Docket No. 38.  To date, they have not entered an appearance.  Whether or not
they were actually served with the Amended Complaint is unclear.

a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Defendants

Choicepoint, Choicepoint Services, National Data Retrieval, and Superior Information Services

(Defendants).  Docket No. 39.

      For the reasons discussed below, the Court grants the Motion in part and denies the

Motion in part.  The Court grants the Motion to Dismiss as to Count One, paragraphs 41(a), (b),

and (d).  The Court denies the Motion as to Counts Two and Four, and further denies the Motion

without prejudice as to Plaintiff's request for injunctive relief.  The Court further grants Plaintiff

leave to amend Count One within 10 days of the accompanying Order.

## I.    BACKGROUND

      Plaintiff David Knechtel is a resident of Winlock, Washington.  Seemingly sometime

around February 2007, he became aware of a negative entry in his credit history showing a civil

judgment against him.  In fact, the civil judgment is not Plaintiff's and belongs to an unrelated

individual also named Knechtel.

      Plaintiff attempted in February 2007 to dispute the inaccurate information through some

national credit reporting agencies.  Plaintiff seemingly did not have any success and suffered

actual financial and pecuniary harm as a result.

      Plaintiff became aware at some point that the negative information in his credit history

was the result of information transmitted to the national credit agencies by the Defendants.

Defendants ChoicePoint, ChoicePoint Services, National Data Retrieval, and Superior

Information Services are entities in the business of collecting background information on

individuals.  As is relevant here, Plaintiff asserts that these Defendants specifically collect and

communicate public records to consumer reporting agencies.  This information includes

bankruptcies, judgments, and tax liens.

Plaintiff's difficulty in discovering Defendants' role in his credit history was purportedly because they deliberately concealed their involvement.  He alleges they keep no telephone number, website, or publicly available street address so that consumers cannot contact them directly to dispute information in their file.

Because Plaintiff believes that Defendants have repeatedly communicated negative credit information about him to unnamed "third parties," Amd. Compl. at ¶ 16, Plaintiff filed the original Complaint in this Court on October 10, 2008.  In June 2009, after Plaintiff filed an Amended Complaint, the dispute was administratively stayed pending a decision by the Judicial Panel on Multidistrict Litigation regarding a motion to centralize this and several related disputes.[2]  Docket No. 43.  After the Panel denied the motion to centralize, this case was returned to the active list.  Docket No. 46.  Defendants' Motion to Dismiss is now ripe for disposition.

## II.    STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure

---

[2] Plaintiff's Complaint, filed on his behalf by Francis & Mailman PC, is one of several similar complaints currently pending in federal court.  See Pirex v. Choicepoint Services, Inc., No. 07-3112 (N.D. Ga.); Rawlings v. Asset Acceptance, LLC, No. 08-1467 (D. Minn.); Ross v. CSC Credit Services, No. 08-5954 (D. Minn.); Weyhe v. Trans Union, LLC, No. 08-6093 (D. Minn.); Knight v. ChoicePoint, Inc., No. 08-4676 (D.N.J.); Knechtel v. Choicepoint, Inc., No. 08-5018 (D.N.J.); Hamilton v. ChoicePoint, Inc., No. 08-5019 (D.N.J.), Payen v. ChoicePoint, Inc., No. 09-435 (D.N.J.); Iler v. Equifax Information Services, No. 08-1862 (D.N.J.); Bonebrake v. Experian Information Solutions, Inc., No. 08-1976 (E.D. Pa.); Breslin v. Trans Union, LLC, No. 08-2236 (E.D. Pa.); Snead v. Equifax Information Services, LLC, No. 08-3574 (E.D. Pa.); Johansen v. Experian Information Solutions, Inc., No. 08-4640 (E.D. Pa.); Thomas v. LexisNexis Risk & Analytic Group, Inc., No. 08-4862 (E.D. Pa.); Santana v. Experian Information Solutions, Inc., No. 08-4956 (E.D. Pa.); Margeson v. ChoicePoint, Inc., No. 08-5043 (E.D. Pa.); Payne v. Equifax Information Systems, LLC, No. 09-568; Marricone v. Experian Information Solutions, Inc., No. 09-1123 (E.D. Pa.).

to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

## III.   DISCUSSION

Within the context of Iqbal and Twombly, the Court now turns to the claims for relief in the Amended Complaint.

### A.   FCRA

Count One of the Amended Complaint seeks relief for several violations of the FCRA. The essence of Defendants' argument is that Plaintiff cannot sustain his claims under the FCRA

because he has not sufficiently pled the factual predicates to show that Defendants are a consumer reporting agency under the Act, a threshold requirement for three of his claims.  Def. br. at 11-12.[3]  Plaintiff counters that the Amended Complaint does sufficiently aver the factual predicates for showing a violation of the Act.  See Pl. br. at 8-10.  The Court disagrees with the Plaintiff and finds that he has failed to sufficiently plead that Defendants are a consumer reporting agency.

Count One of the Amended Complaint seeks relief for four distinct violations of the FCRA.  Specifically, Count One asserts violations of (a) 15 U.S.C. § 1681i; (b) 15 U.S.C. § 1681e(b); (c) 15 U.S.C. § 1681s-2(b); and (d) 15 U.S.C. §§ 1681c and 1681g.  See Amd. Compl. at ¶41(a)-(d).[4]  Relief under claims (a), (b), and (d) requires that the defendant be a consumer reporting agency, or CRA.  See 15 U.S.C. §§ 1681i, 1681e, 1681c, 1681g.

A CRA is a defined as:

---

[3] Defendants also make the collateral argument that the case should be dismissed because Plaintiff has not specified which "Defendant" took which actions.  See Def. br. at 12-14, Def. reply br. at 5-7.  Defendants make the interesting argument that, under Iqbal, allegations that several, unspecified Defendants took action that only one could have taken is inherently implausible.  See Def. reply br. at 6 (citing Stewart v. Evans, No. 09-1428, 2009 WL 2707540, at *5 (M.D. Pa. Aug. 25, 2009); Folkman v. Roster Fin. LLC, No. 05-2099, 2005 WL 2000169, at *3 (D.N.J. Aug. 16, 2005)).  While the Court agrees that more specific pleading would be helpful and desirable, the Court does not find that the general pleading here is an independent grounds for granting the Motion to Dismiss.  Plaintiff's allegations include, in part, an assertion that the Defendants were working in concert with one another.  See Amd. Compl. at ¶ 9.  Thus, an allegation that all Defendants acted is consistent with the other allegations in the Amended Complaint and puts them on notice of their alleged misdeeds.

[4] Defendants do not direct the Motion to Dismiss to Plaintiff's claim for relief under paragraph 41(c), an alleged violation of 15 U.S.C. § 1681s-2(b).  See Def. br. at 9 n.8.  Thus the Court need not address it here.

Further, Plaintiff asserts a claim for negligence in Count Three.  See Amd. Compl. at ¶¶ 51-54.  Defendants have not briefed that claim and it is therefore likewise not addressed here.

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).  Embedded in the CRA definition is "consumer report," which is defined as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for–(A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

The CRA definition encompasses at least four elements that must be met for an entity to be found a CRA: (1) it must act in exchange for compensation; (2) it must "regularly" assemble or evaluate information on consumers; (3) its purpose in evaluating this information must be to furnish consumer reports; and (4) it must utilize interstate commerce in the preparation or furnishing of the consumer report.  Lewis v. Ohio Prof'l Elec. Network LLC, 190 F. Supp. 2d 1049, 1056 (S.D. Ohio 2002).  A consumer report, in turn, has at least three elements: (1) it must be made by a CRA; (2) it must regard the consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living; and (3) it must be used, expected to be used, or collected in whole or in part for credit or insurance to be used primarily for personal, family, or household purposes, (B) employment purposes, or (C) any other purpose authorized under section 1681b.  Id. at 1058-59.

6

Elements one and four of a CRA are seemingly not in dispute in this matter.  The
Defendants seem to focus their arguments on whether they actually assemble or evaluate
information on consumers and on whether they produce consumer reports.  Def. br. at 12.

The phrase "assembling or evaluating" is not specifically defined by statute.  Several
courts that have reviewed the phrase, however, have determined that it "implies a function which
involves more than receipt and retransmission of information identifying a particular debt."  See
D'Angelo v. Wilmington Med. Ctr., Inc., 515 F. Supp. 1250, 1253 (D. Del. 1981); DiGianni v.
Stern's, 26 F.3d 346, 349 (2d Cir. 1994) (citing D'Angelo), cert. denied, 513 U.S. 897 (1994);
Smith v. First Nat. Bank of Atlanta, 837 F.2d 1575, 1579 (11th Cir. 1988) (citing same), cert.
denied, 488 U.S. 821 (1988); Ori v. Fifth Third Bank, 603 F. Supp. 2d 1171, 1175 (E.D. Wis.
2009) (citing same); Lewis, 190 F. Supp. 2d at 1056 (citing Smith); Ditty v. CheckRite, Ltd.,
Inc., 973 F. Supp. 1320, 1332 (D. Utah 1997) (citing DiGianni (quoting D'Angelo)); see also
Melendez v. Equifax Credit Info. Servs., No. 95-2309, 1997 WL 392375, at *2 (D.P.R. July 3,
1997) ("It is will settled that a company or person which merely furnishes information to a
consumer reporting agency is not a 'consumer reporting agency' or a 'user of information' and,
therefore, not within the scope of the [FCRA].").  Stated succinctly, "obtaining and forwarding
information does not make an entity a CRA."  Ori, 603 F. Supp. 2d at 1175.  The phrase
"assembling or evaluating" is not directed at "those who supply information on individual debts
to such consumer reporting agencies, and who are remote from those decisionmakers who rely
upon 'consumer reports' in making credit and other decisions."  D'Angelo, 515 F. Supp. at 1253;
Smith, 837 F.2d at 1579 (quoting same).

Applying these standards to the Amended Complaint in the context of Iqbal, Plaintiff

simply has not met his burden of pleading a plausible claim for relief under the FCRA.[5]  As to

step one of the analysis (i.e., separating factual allegations from legal conclusions), the Court

finds that Plaintiff has well-pled the following factual allegations regarding the FCRA claims: 1)

Plaintiff's credit records include a civil judgment that does not belong to him; 2) Defendants

have reported this judgment to other persons; 3) Defendants collect public records, 4) Plaintiff

has disputed his credit record with national CRAs; 5) Defendants do not have any telephone

number, website, or street address; 6) Plaintiff has applied for and been denied credit; and 7)

Plaintiff has suffered a decreased credit score.  All other allegations in the Amended Complaint

are legal conclusions or conclusory statements, so called "threadbare recitals of the elements of a

---

[5] During the pendency of the present Motion, Plaintiff twice filed additional briefs directing the Court's attention to subsequent decisions in the Eastern District of Pennsylvania in related cases.  See Docket Nos. 53, 57.  Defendants also filed one additional brief in response to the Plaintiff's first supplemental brief.  See Docket No. 55.  These three additional briefs are impermissible sur-reply briefs under Local Civil Rule 7.1(d)(6).  Sur-reply briefs are only permitted with the permission of the Court.  L. Civ. R. 7.1(d)(6), which neither party received.

Both parties are hereby admonished that these supplemental briefs should not be filed in the future without leave of the Court.  The substantive questions in the present dispute are being litigated in four different federal jurisdictions.  This means that persuasive authority is bound to accumulate.  Notwithstanding, in the interests of efficient disposition of pending motions, the Court should not be assailed with dripping faucet briefing; that is, an endless trickle of briefs after motions are filed.

As to the substance of the two opinions, Marricone v. Experian Information Solutions Inc., No. 09-1123, 2009 WL 3245417 (E.D. Pa. Oct. 6, 2009), and Breslin v. Trans Union, LLC, No. 08-2236, Docket No. 58 (E.D. Pa. Oct. 21, 2009), this Court is not called upon to evaluate the sufficiency of the pleadings in those cases or the quality of the respective courts' reasoning, as the parties would have the Court do.  Cf. Docket No. 53 ("The Marricone decision, which is attached hereto, reviewed in the same facts and allegations under [the FCRA] as those pled in this case and specifically found that the plaintiff's complaint 'alleges sufficient facts under Twombly and Iqbal to survive a motion to dismiss on its FCRA claims.'  The same result should be reached in this case."); Docket No. 55 ("[D]efendants respectfully suggest that the decision in Marricone fails to apply the Rule 8 analysis required under Twombly and Iqbal.").  This Court's focus is on the sufficiency of the pleadings in *this* case in light of the Court's own review of the law and record.

cause of action." See Iqbal, 129 S. Ct. at 1949.

As to step two, the above claims do not support a plausible claim that Defendants are a CRA and therefore could have violated the provisions alleged in the Amended Complaint at paragraphs 41(a), (b), and (d).  Plaintiff has not sufficiently alleged that Defendants assemble or evaluate any of the information they collect.[6]  As far as the Court can ascertain from the facts alleged, Defendants are merely a conduit of information, as opposed to an entity that in any way re-organizes or filters information.  Cf. Lewis, 190 F. Supp. 2d at 1057 (finding entity a CRA where it filtered and reassembled public records).  Plaintiff has not pled *any* fact to show that Defendant does anything other than pass information on to other parties that assemble and evaluate it.  Cf. Knight v. ChoicePoint, Inc., No. 08-4676, Docket. No. 42, ¶ 12 (D.N.J.) ("Defendants do not gather the complete court record or government files concerning any particular bankruptcy, civil judgment, or tax lien, but only select data as requested by their clients who purchase it.").  Thus under Plaintiff's allegations, construed in all favorable light, Defendants are a mere purveyor of unadulterated information, which is insufficient to state a

_____

[6] Plaintiff's reliance on Re: Sections 603, 607, and 609 of the Fair Credit Reporting Act, Staff Opinion Letter, 1998 WL 34323759 (F.T.C. June 9, 1998), to show that Defendants assemble or evaluate information is misplaced.  While the letter describes how an entity can "assemble" information–at least in the FTC's view–the letter does not show how a plaintiff can meet the requisite pleading standards in federal court.  Notably, none of the facts regarding the entity in the FTC Staff Opinion have been pled here such that the Court can permit this matter to continue.  See id. (noting that entity's researchers go to local courthouses, review records, forward abstracts of dockets or copy docket information, and then entity prepares a report).
   Plaintiff's reliance on Henson v. CSC Credit Services, 29 F.3d 280 (7th Cir. 1994) is likewise misplaced as that opinion does not address the threshold question of what makes an entity a CRA.
   Finally, Plaintiff's reliance on other cases finding Defendants are CRAs are inapplicable to this case, as the software or services at issue in those cases is not implicated here.  See Pl. br. at 2 n.2.

claim under the FCRA.  See D'Angelo, 515 F. Supp. at 1253.

Therefore, the Court grants Defendants' Motion to Dismiss as to Count One, paragraphs

41(a), (b), and (d).[7]  However, Plaintiffs are granted leave to amend the Complaint within 10

days of the accompanying Order.  See Shane v. Fauver, 213 F.3d 113, 115-116 (3d Cir. 2000)

(holding court should generally grant leave to amend a complaint dismissed for failure to state a

claim).

**B.      Choice of Law Defamation & Invasion of Privacy/False Light**

In Counts Two and Four of the Amended Complaint, Plaintiff alleges claims for

defamation and invasion of privacy/false light respectively.  As is relevant to both claims,

Defendants argue as a threshold matter that Washington law should apply because the law of

Plaintiff's domicile, Washington, applies under New Jersey defamation law.  Def. br. at 16-17,

16 n.10.  Plaintiff did not counter Defendants' assertion.  Nevertheless, the Court holds that the

choice of law issue is not appropriately addressed at this stage of the litigation.

In a case based on federal question jurisdiction where a court is exercising supplemental

jurisdiction over state law claims, the federal court applies the choice of law rules of the forum

state.  MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co., 197 F.3d 1276, 1282 (9th Cir. 1999).

Choice of law questions under New Jersey law require a court to apply the two-step

"governmental-interests analysis."  Rowe v. Hoffman-La Roche, Inc., 917 A.2d 767, 771 (N.J.

2007).  This test is "fact intensive," Warriner v. Stanton, 475 F.3d 497, 500 (3d Cir. 2007), and

---

[7] Because the Court grants Defendants' Motion on the basis that Plaintiff has not
sufficiently pled that Defendants are CRAs under the FCRA, the Court does not reach
Defendants' arguments on pages 15-16 of the supporting brief regarding the sufficiency of the
reasonable investigation claim and the "catch all" claim.

thus may be "inappropriate or impossible for a court to conduct" at the motion to dismiss stage.

In re Samsung DLP Television Class Action Litig., No. 07-2141, 2009 WL 3584352, at *3

(D.N.J. Oct. 27, 2009) (citing Harper v. LG Elecs. USA, Inc., 595 F. Supp. 2d 486, 490-91

(D.N.J. 2009)).  Therefore, where the pleadings before the court at the motion to dismiss stage do

not permit it to properly conduct the analysis, the court may deny the motion pending further

discovery.  See id.

The Court holds that it lacks sufficient factual information to conduct the choice of law

analysis over the supplemental state law claims at this time.  Neither party has fully briefed the

issue nor has either party presented the Court with sufficient factual information for a sua sponte

analysis.  Hence, the Court cannot now hold that Washington or New Jersey law governs the

state law matters in this dispute.

### C.    Defamation

In Count Two, Plaintiff alleges a claim for defamation.  Defendants argue (under

Washington law) that Plaintiff has failed to state a claim because he has not alleged any of the

details of the alleged defamation (e.g., what statement, when, to whom) with sufficient

specificity.  See Def. br. at 17.  Plaintiff counters that he has sufficiently pled enough facts to

show that his right to relief is more than speculative.  Pl. br. at 13-14.  The Court agrees with

Plaintiff and denies Defendants' Motion as to Count Two.

Under New Jersey defamation law, "the plaintiff bears the burden of establishing, in

addition to damages, that the defendant '(1) made a defamatory statement of fact (2) concerning

the plaintiff (3) which was false, and (4) which was communicated to a person or persons other

than the plaintiff.'"  Petersen v. Meggitt, 969 A.2d 500, 507 (N.J. Super. Ct. App. Div. 2009)

11

(quoting Feggans v. Billington, 291 N.J. Super. 382, 390-91, 677 A.2d 771 (App. Div. 1996)). Under Washington defamation law, a plaintiff must prove "(1) that defendant's statement was false, (2) that the statement was unprivileged, (3) that the defendant was at fault, and (4) that the statement proximately caused damages."  Eubanks v. N. Cascades Broad., 61 P.3d 368, 371 (Wash. Ct. App. 2003).

Under Iqbal step one, the Court finds the following well-pled factual allegations regarding the defamation claim: 1) Plaintiff's credit records include a civil judgment that does not belong to him; 2) Defendants have reported this judgment to other persons; 3) Defendants collect public records; 4) Plaintiff has applied for and been denied credit; 5) Plaintiff has suffered a decreased credit score; and 6) Plaintiff experienced out-of-pocket expenses.  Under Iqbal step two, these facts support a plausible claim under either New Jersey or Washington law.  These facts show that a plausibly defamatory statement was made (the civil judgment), the statement was plausibly false (the judgment does not belong to Plaintiff), the communication was about Plaintiff, the statement was communicated to others, and the statement plausibly caused harm. As to the degree of fault required by Washington law, Plaintiff has plausibly pled that the judgment did not belong to Plaintiff at the time the Defendants reported it, thus raising an inference that they must have known or should have known, since they were the ones who collected the public records, that their statement was false and reported it anyway.  These allegations are sufficient to plausibly state a claim under either New Jersey or Washington law.

Therefore, Plaintiff has plausibly stated a claim for defamation and Defendants' Motion to Dismiss is denied as to Count Two.

**D.     Invasion of Privacy/False Light**

In Count Four, Plaintiff alleges a claim for invasion of privacy/false light.  Defendants argue (under Washington law) that like the defamation claim, Plaintiff has failed to state a claim because he has not alleged details of the alleged false light tort.  See Def. br. at 17-19.  Plaintiff counters with the same defense as to his defamation claim; that is, he has sufficiently pled enough facts to show his right to relief is more than speculative.  Pl. br. at 13-14.  The Court agrees with Plaintiff and denies Defendants' Motion as to Count Four.

Under New Jersey law, the tort of false light involves "'publicity that unreasonably places the other in a false light before the public.'"  Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1115-16 (N.J. 2009) (quoting Romaine v. Kallinger, 537 A.2d 284, 289-90 (N.J. 1988)).  The tort has two elements: "(1) the false light in which the other was placed would be highly offensive to a reasonable person; and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  Id. (quotations removed).  Similarly, under Washington law, the tort of false light requires: (1) the publication; (2) of a materially false statement concerning the plaintiff; (3) that would be highly offensive to a reasonable person.  See Eastwood Cascade Broad. Co., 722 P.2d 1295, 1297 (Wash. 1986).  Publication for purposes of false light requires that the false statement be communicated to "a substantial number of people."  LaMon v. City of Westport, 723 P.2d 470, 474 (Wash. Ct. App. 1986), review denied, No. 53195-1, 1989 WL 661635, cert. denied, 493 U.S. 1074 (1990).

Under Iqbal step one, the Court finds the following well-pled factual allegations regarding the false light claim: 1) Plaintiff's credit records include a civil judgment that does not

13

belong to him; 2) Defendants have reported this judgment to other persons; 3) Defendants collect public records; 4) Plaintiff has applied for and been denied credit; 5) Plaintiff has suffered a decreased credit score; and 6) Plaintiff experienced out-of-pocket expenses.  Under Iqbal step two, these facts support a plausible claim under either New Jersey or Washington law for false light.  These facts show that a statement was made (the civil judgment), the statement was plausibly false (the judgment does not belong to Plaintiff), and–giving Plaintiff the benefit of reasonable inferences–the false statement regarding Plaintiff's credit history was published (because the statement appears in Plaintiff's credit records), would plausibly be highly offensive to a reasonable person (because it reflects poor creditworthiness), and Defendants published the statement knowing it was false (because the judgment did not in fact belong to Plaintiff, which Defendants knew or should have known since they collected the public records themselves).

Therefore, Plaintiff has plausibly stated a claim for false light and Defendants' Motion to Dismiss is denied as to Count Four.

### E.   Injunctive Relief

Finally, in the Prayer for Relief, Plaintiff seeks equitable relief for the common law claims in the Amended Complaint.  See Amd. Compl. at ¶ 60(e).  Specifically, Plaintiff seeks an order "directing that Defendants send to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected credit report and information."  Id.  Defendants argue that this requested relief should be dismissed because it is simply an end-run around the FCRA, which does not permit injunctive relief in private litigation.  Def. br. at 19-20.  Plaintiff counters that he is allowed to plead alternative theories of liability and that a monetary remedy would not afford him complete relief.

14

Pl. br. at 15-16.  The Court finds that neither party has adequately addressed whether such relief is available and will therefore deny the Motion to Dismiss without prejudice.

Under 15 U.S.C. § 1681t(a), state laws are pre-empted to the extent that those laws are inconsistent with the FCRA.  See Hamilton v. DirecTV, Inc., 642 F. Supp. 2d 1304, 1306 (M.D. Ala. 2009); Jarrett v. Bank of Am., 421 F. Supp. 2d 1350, 1353 (D. Kan. 2006); Millett v. Ford Motor Credit Co., No. 04-2450, 2006 WL 1301160, at *4 (D. Kan. May 9, 2006); Poulson v. Trans Union, LLC, 370 F. Supp. 2d 592, 593 (E.D. Tex. 2005).  Under the FCRA, a private party cannot seek injunctive relief, only the FTC can.  See Washington v. CSC Credit Servs. Inc., 199 F.3d 263, 268 (5th Cir. 2000); see also Weiss v. Regal Collections, 385 F.3d 337, 341 (3d Cir. 2004) (favorably citing Washington in context of Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.).  Several courts have thus held that where a litigant seeks injunctive or equitable relief under state law claims for actions falling within the FCRA's scope of coverage, such relief is pre-empted.  See Hamilton, 642 F. Supp. 2d at 1306 ("Because the FCRA vests the FTC exclusively with the right to seek injunctive relief, the court finds that a state law claim that grants a litigant access to equitable relief would frustrate and conflict with the FCRA."); Jarrett, 424 F. Supp. 2d at 1353 (holding § 1681t(b)(1)(F) preempts a claim for injunctive relief against a furnisher of credit under 15 U.S.C. § 1681s-2); Millett, 2006 WL 1301160, at *4 (holding pre-empted plaintiff's claim for injunctive relief under Kansas law); Poulson, 370 F. Supp. 2d at 593 (holding even if plaintiff could bring a claim under Texas law for injunctive relief, it would be pre-empted under FCRA).  But see Smith v. Equifax Info. Servs., LLC, 522 F. Supp. 2d 822, 825 (E.D. Tex. 2007) (implying that injunctive relief might be available under § 1681s-2).

Because neither party raised the potential pre-emption issue as to Plaintiff's requested

15

relief, the issue is not sufficiently ripe for review.  Therefore, the Court denies Defendants'

Motion to Dismiss without prejudice as to Plaintiff's request for injunctive relief.[8]

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss as to Count One,

paragraphs 41(a), (b), and (d).  The Court DENIES the Motion as to Counts Two and Four.  The

Court DENIES WITHOUT PREJUDICE the Motion as to the request for injunctive relief.

Further, Plaintiff is GRANTED leave to amend the Amended Complaint as to Count One,

paragraphs 41(a), (b), and (d) within TEN DAYS of the accompanying Order.  Finally, because

Defendants did not raise any arguments as to Count One, paragraph 41(c), and Count Three

(negligence), those claims are undisturbed by this Opinion and the accompanying Order.


Dated:   11-23-2009                                                   /s/ Robert B. Kugler
                                                                            ROBERT B. KUGLER
                                                                            United States District Judge

---

[8] Should the injunctive relief issue be raised again, briefing on the pre-emption question
would be warranted.

16